# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JMCB, LLC, ON BEHALF OF ITSELF
AND ALL OTHERS SIMILARLY
SITUATED

CIVIL ACTION

VERSUS

NO. 17-77-JWD-JCW

THE BOARD OF COMMERCE &
INDUSTRY; LOUISIANA
DEPARTMENT OF ECONOMIC
DEVELOPMENT; AND SABINE PASS
LIQUEFACATION, LLC

## RULING AND ORDER ON SUBJECT MATTER JURISDICTION

This matter comes before the Court *sua sponte* on the question of subject matter

jurisdiction. At a status conference held on August 15, 2017, the Court ordered the parties to

submit briefs on this issue. (Doc. 44.)  Pursuant to that order, the parties have filed extensive

memoranda. (Docs. 45, 46, 47, 52, 53, 55.)

In sum, Plaintiff JMCB ("Plaintiff") argues that the Court should remand this matter.

Defendants The Board of Commerce & Industry (the "Board") and Louisiana Department of

Economic Development ("LDED") (collectively, the "State Defendants") and former Defendant[1]

Sabine Pass Liquefaction, LLC ("SPL") (collectively with the State Defendants, the

"Defendants") contend that there is jurisdiction in this case and that remand is inappropriate.

The Court has carefully considered the law, the facts in the record, and the arguments of

the parties and is prepared to rule.  For the following reasons, the Court finds (1) that there is

---

[1] SPL was originally named as a defendant in this case. (Doc. 1-2.)  Plaintiff subsequently filed a notice of dismissal of SPL (Doc. 16), which this Court granted on April 5, 2017. (Doc. 17.)  However, there are two pending motions essentially asking that SPL be joined back into the action, either as a necessary party under Fed. R. Civ. P. 19 or by intervention (Docs. 22, 23.)  As a result, the Court has considered SPL's arguments in deciding the issue of subject matter jurisdiction.

jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"); (2) that the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), does not bar this action; and (3) that comity, the Eleventh Amendment, and the Declaratory Judgment Act, 28 U.S.C. § 2201, do not justify remand.

## I.     Relevant Background

Article VII, Section 21(F) of the Louisiana Constitution of 1974 provides that the Board, with approval from the governor, "may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the [B]oard, with the approval of the governor, deem in the best interest of the state." (Doc. 1–2 at 2 (quoting La. Const. art. VII, § 21(F)).)  The constitutional provision specifically defines "manufacturing establishment" and "addition to a manufacturing establishment," and LDED regulations govern the administration of the exemption. (Doc. 1-2 at 2–3.)

Plaintiff alleges in its Class Action Petition ("Petition") that it "currently owns property (land) in Cameron Parish which is subject to ad valorem taxes for which no exemption is available." (Doc. 1-2 at 7.)  The Petition further claims that SPL applied for and entered into a contract with the State Defendants for the above tax exemptions. (Doc. 1-2 at 3–5.)  According to the Petition, a LDED worksheet recommending approval during the process stated that the contract amount was $6 billion and that the "ad valorem tax was $1,447,200,000". (Doc.1-2 at 4.)

Plaintiff now prays for a judgment declaring that the contract between the State Defendants and SPL is, for various specified reasons, "an improper act of the Board in violation of . . . Article VII, Section 21(F), and declaring that the Contract is null and void and without

legal effect[.]" (Doc. 1-2 at 12–13.)  Plaintiff brings this action on behalf of itself and as representatives of the following class:

> Any and all individuals and businesses that own property in Cameron Parish, State of Louisiana that is subject to ad valorem taxation, and any and all Cameron Parish governmental bodies that are entitled to receive Cameron Parish ad valorem property taxes, as of October 12, 2016.
>
> Specifically excluded from the class are Sabine Pass Liquefaction, LLC, its successors and assigns, and all members of the judiciary, their spouses, and their immediate family members.

(Doc. 1-2 at 10–11.)

## II.    CAFA

Defendants asserted in their notice of removal that this Court has jurisdiction under CAFA and argue that the requirements for the statute are met.  Plaintiff discusses the policy behind CAFA and maintains that it was not intended for this type of case.

In short, the Court agrees with Defendants.  Pursuant to CAFA, a court has subject matter jurisdiction if "(1) the number of individuals in the proposed class exceeds 100; (2) minimal diversity of citizenship exists; that is, at least one plaintiff and one defendant are from different states, and (3) the amount in controversy, exclusive of interests and costs, is greater than $5,000,000." *Nolan v. Exxon Mobil Corp.*, No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013) (citing 28 U.S.C. § 1332(d), (5)(B)); 14B Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 3724 (4th ed. 2017) (same).

Here, the requirements of CAFA are easily met.  First, Plaintiff alleges in the Petition that "there are several thousand individuals and businesses, and several applicable governmental bodies in Cameron Parish which would qualify as a member of the proposed class." (Doc. 1-2 at 11.)  Thus, the proposed class exceeds 100.

Second, there is minimal diversity. "For purposes of [CAFA,] . . . an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). "[A] limited liability company is an 'unincorporated association' as that term is used in . . . § 1332(d)(10)[.]" *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699 (4th Cir. 2010).

Here, SPL is alleged to be a "foreign limited liability company domiciled in Delaware." (Doc. 1-2 at 1.) Further, SPL has submitted uncontroverted evidence establishing (1) it is organized under the laws of Delaware; and (2) its headquarters is in Texas, where its officials control SPL's business activities; where its "highest ranking officials" are based; and where its management and strategic planning (among other operations) are conducted. (Doc. 46-2). Thus, SPL is clearly a citizen of Delaware and Texas. Meanwhile, JMCB alleges that it is a "Louisiana domestic limited liability company." (Doc. 7 at 7.) Thus, based on either the allegations of the complaint or the unrebutted evidence, there is minimal diversity.

And third, the amount in controversy requirement is satisfied. "The defendant, as the removing party, bears the burden of proving by a preponderance of the evidence that the jurisdictional amount has been met." *Nolan*, 2013 WL 6194621, at *2 (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). "Where, as here, the case is removed from a state jurisdiction that does not require the plaintiff to specifically plead the amount in controversy, the defendant may satisfy this burden by demonstrating that it is 'facially apparent' from the petition that the claims are above the jurisdictional amount." *Id.* (citing *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (citing La. Code Civ. P. art. 893)). "Under these circumstances, the defendant need not prove the jurisdictional amount to a legal certainty." *Id.* (citing *Allen,* 63 F.3d at 1335). "It is enough that the defendant demonstrates that the plaintiff's

claim 'more likely than not' meets the jurisdictional requirement." *Id.* (citing *Allen*, 63 F.3d at 1336).

Here, Defendants have met their burden. The ad valorem tax at issue is worth approximately $1.4 billion. (Doc. 1-2 at 4.)  Thus, Defendants have established each requirement for jurisdiction under CAFA.

Additionally, the Court rejects the Plaintiff's argument that "there is no indication that class actions involving matters of state tax administration, like the ones raised in this case, were intended to fall within CAFA's ambit." (Doc. 45 at 2.)  First, as Cameron LNG, LLC, argues in a related case, the plain language of CAFA provides that "district courts shall have original jurisdiction of *any* civil action" if the requirements are met. (*JMCB, LLC v. Bd. of Commerce & Indus.*, No. 17-75 (M.D. La.), Doc. 63 at 1–2 (quoting 28 U.S.C. § 1332(d)(2) (emphasis added)).)  Second, as to legislative intent, the Senate Report on CAFA unambiguously stated: "Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 43.  And third, as SPL asserts: "CAFA contains specific provision outlining the types of cases that are *not* subject to CAFA, and the tax cases are not on the list." (Doc. 55 at 2 n.1

(citing 28 U.S.C. § 1332(d)(9))[2]; *see also* § 1332(d)(5) (primary defendant exception)[3].)  That is, state tax cases are not a specifically enumerated exception to CAFA.

Indeed, Plaintiff has failed to demonstrate that *any* exception to CAFA applies.  This is significant because, while the removing parties have the burden of proving that the above CAFA requirements have been met, *Nolan*, 2013 WL 6194621, at *2 (citation omitted), the party seeking to remand a class action removed under CAFA has the burden of proving that a CAFA exception applies. *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006). Here, Plaintiff's failure to meet its burden is an additional basis for denying its request to remand.

---

[2] 28 U.S.C. § 1332(d)(9) provides:

> (9)  Paragraph (2) [(which confers jurisdiction)] shall not apply to any class action that solely involves a claim—

> > (A)  concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 (15 U.S.C. 78p(f)(3) [2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

> > (B)  that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

> > (C)  that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

[3] Under § 1332(d)(5):

> Paragraphs (2) through (4) shall not apply to any class action in which—

> > (A)  the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

> > (B)  the number of members of all proposed plaintiff classes in the aggregate is less than 100.

*See also Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) ("The plain text of § 1332(d)(5)(A), using the definite article before the plural nouns, requires that all primary defendants be states. Had Congress desired the opposite, it would have used 'a' and the singular, or no article.")

Lastly, SPL's dismissal from this suit (which, as noted above, is still the subject of certain pending motions) does not eliminate CAFA jurisdiction. "It is well-established that the time-of-removal rule prevents post-removal actions from destroying jurisdiction that attached in a federal court under CAFA." *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 427 (5th Cir. 2014) (citing *State of Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639–40 (5th Cir. 2014) (describing "overwhelming and unanimous authority" among the circuit courts for the position that post-removal events do not oust CAFA jurisdiction)); *see also* Wright, *Federal Practice and Procedure* § 3724 ("A number of courts of appeals now have applied to cases removed under CAFA the general principle that most post-removal events will not affect federal jurisdiction."). "[W]hat matters for the purpose of determining CAFA jurisdiction is 'the status of an action when filed—not how it subsequently evolves.' " *Cedar Lodge*, 768 F.3d at 427 (quoting *State of Louisiana*, 746 F.3d at 639). Thus, in *Cedar Lodge*, the Fifth Circuit held that plaintiff could not "avoid federal jurisdiction through a post-removal amendment" of adding a new defendant. *Id.* at 429.

The same reasoning applies here. SPL's dismissal from this action is irrelevant for the Court's jurisdictional analysis under 28 U.S.C. § 1332(d).

In sum, this Court has subject matter jurisdiction under CAFA. The Court now turns to the other alleged bases for remanding the case.

### III.    TIA

Defendants argue that the TIA does not bar this action based on the plain language of the statute, the law's purpose, and binding Supreme Court precedent. Conversely, Plaintiff says that the Court's decision in this case on the validity of SPL's contract "would directly affect whether the assessment, levy and collection of *ad valorem* taxes on SPL's property, which is subject to

the exemption contract, should be restrained or should proceed during the term of the contract." (Doc. 52 at 2; *see also* Doc. 45 at 3.)

The Court again agrees with the Defendants. The TIA provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This is a suit by private citizens to invalidate a contract between the State Defendants and SPL because said agreement was allegedly in violation of the Louisiana constitution. (Doc. 1-2 at 11–13.) Plaintiff is seeking to prevent SPL's entitlement to ad valorem tax exemptions. (Doc. 1-2 at 1–2.) As Cameron LNG, LLC, stated in the related proceeding, "JMCB seeks to *enforce*, not to restrain, the collection of property tax levied by local taxing authorities within Louisiana." (*JMCB v. Board of Commerce & Industry*, No. 17-75 (M.D. La.), Doc. 52 at 7.) Thus, this suit does not satisfy the plain language of the TIA, as JMCB is not seeking to "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law[.]" 28 U.S.C. § 1341.

Supreme Court precedent confirms this. "[*Hibbs v. Winn*, 542 U.S. 88, 124 S. Ct. 2276 (2004)] held that the TIA did not preclude a federal challenge by a third party who objected to a tax credit received by others, but in no way objected to her own liability under any revenue-raising tax provision." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 430, 130 S. Ct. 2323, 2335 (2010). The *Hibbs* court explained how this decision was rooted in the legislative history of the TIA:

> Just as the [Anti-Injunction Act ("AIA"), which "Congress drew" upon "[i]n composing the TIA's text,] shields federal tax collections from federal-court injunctions, so the TIA shields state tax collections from federal-court restraints. In both [the AIA, 26 U.S.C. § 7421(a)[,] and 28 U.S.C. § 1341, Congress directed taxpayers to pursue refund suits instead of attempting to restrain collections. Third-party suits not seeking to stop the collection (or contest the validity) of a tax *imposed on plaintiffs* . . . were outside Congress' purview. The TIA's legislative history is not silent in this regard. The Act was designed expressly to restrict "the

jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." S. Rep., p. 1.

Specifically, the Senate Report commented that the Act had two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court—usually out-of-state corporations asserting diversity jurisdiction—and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances. *Id.,* at 1–2; see R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1173 (5th ed.2003) (citing *Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 522–523, and nn. 28–29, 527, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)). See also [*Jefferson County v. Acker*, 527 U.S. 423, 435, 119 S. Ct. 2069 (1999)] (observing that the TIA was "shaped by state and federal provisions barring anticipatory actions by taxpayers to stop the tax collector from initiating collection proceedings"). In short, in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. Nowhere does the legislative history announce a sweeping congressional direction to prevent "federal-court interference with all aspects of state tax administration." Brief for Petitioner 20; *post,* at 2298.

*Hibbs*, 542 U.S. at 104–05, 124 S. Ct. at 2287–88. *Hibbs* also analyzed prior Supreme Court precedent and concluded that the Court "has interpreted and applied the TIA only in cases Congress wrote the Act to address, *i.e.*, cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.*, 542 U.S. at 107, 124 S. Ct. at 2289.

More recently, in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015), the Supreme Court again looked at the TIA in the context of a state law notice and reporting statute. The Court extensively analyzed the terms "assessment, levy or collection" under the Federal Tax Code (both when the TIA was enacted and today) and in various dictionaries, and the Court explained that "these three terms refer to discrete phases of the taxation process[.]" *Brohl*, 135 S. Ct. at 1129–31.[4] Emphasizing that "[j]urisdictional rules should be clear," the Court said that

---

[4] "Assessment . . . refers to the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority." *Brohl*, 135 S. Ct. at 1130 (citing 26 U.S.C. § 1530). "Assessment" can also refer to either as a " ' "recording" of the amount the taxpayer owes the Government,' " *id.* (quoting *Hibbs*, 542 U.S. at 100, 124 S. Ct. 1548), or, "more broadly, . . . as an official action taken based on

9

"[t]he question . . . is whether the relief to some degree stops 'assessment, levy or collection,' not whether it merely inhibits them." *Id.* at 1133 (citation omitted).

These Supreme Court cases confirm this Court's reading of the plain language of the TIA. This case is exactly the kind which *Hibbs* said was outside of the TIA: "a federal challenge by a third party who objected to a tax credit received by others, but in no way objected to her own liability under any revenue-raising tax provision." *Levin*, 560 U.S. at 430, 130 S. Ct. at 2335. The two purposes of the TIA, as stated in *Hibbs*, are not implicated here, and *Hibbs* expressly recognized: "Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." *Hibbs*, 542 U.S. at 105, 124 S. Ct. at 2288 (citation and quotations omitted). And, perhaps most importantly, Plaintiff's relief does not fall under any of the clear definitions of "assessment, levy, or collection" articulated by *Brohl*.

In sum, the plain language of the TIA as well as Supreme Court precedent demonstrate that the statute is not a bar to this Court exercising subject matter jurisdiction. As a result, the Court rejects Plaintiff's challenge.

## IV.     Other Jurisdictional Issues

### A.  Comity

Defendants contend that comity does not warrant remand because the State Defendants have consented to removal. Plaintiff, on the other hand, urges that, while remand is not required when a taxing authority joins in removal, the Court still has the discretion to remand, and it is

---

information already reported to the taxing authority," *id.* The Tax Code defines "levy" as "a specific mode of collection under which the Secretary of the Treasury distrains and seizes a recalcitrant taxpayer's property." *Id.* (citing 26 U.S.C. § 6331 (2012 ed.); § 1582 (1934 ed.)). Dictionaries contemporary to the Tax Code "defined 'levy' as the legislative function of laying or imposing a tax and the executive functions of addressing recording, and collecting the amount a taxpayer owes." *Brohl*, 135 S. Ct. at 1130 (citations omitted). "Finally, 'collection' is the act of obtaining payment of taxes due," though there are certain additional narrow and broad readings of the term under the Tax Code. *Id.* at 1130–31 (citations omitted).

appropriate to do so in this case. All parties focus on the Supreme Court's decision in *Levin v. Commerce Energy, Inc.*, which contains the Court's most recent analysis of tax comity.

In *Levin*, the Supreme Court explained that its "precedents affirm that the comity doctrine is more embracive than the TIA[.]" *Levin*, 560 U.S. at 424, 130 S. Ct. at 2332. "The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Id.*, 560 U.S. at 421, 130 S. Ct. at 2330. The Supreme Court further stated:

> The doctrine reflects . . . "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." See [*Fair Assessment in Real Estate Assn., Inc. v. McNary*, 454 U.S. 100, 102 S. Ct. 177 (1981)] (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)).

*Id.*, 560 U.S. at 421, 130 S. Ct. at 2330. "Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* "For '[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.' " *Levin*, 560 U.S. at 421–22, 130 S. Ct. at 2330 (quoting *Dows v. Chicago*, 11 Wall. 108, 110, 20 L. Ed. 65 (1871)). Supreme Court precedent "shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [the Court] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Id.*, 560 U.S. at 422, 130 S. Ct. at 2330 (citing *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282, 29 S. Ct. 426 (1909)). The Supreme Court in *Levin* noted "in practical terms, 'the special reasons justifying the policy of federal noninterference with state tax collection' " are:

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Levin*, 560 U.S. at 422 n. 2, 130 S. Ct. at 2330 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128, n. 17, 91 S. Ct. 674, 27 L.Ed.2d 701 (1971)) (Brennan, J., concurring in part and dissenting in part)). "Comity, in sum, serves to ensure that 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.' " *Id.*, 560 U.S. at 431, 130 S. Ct. at 2336 (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746 (1971)).

Here, the Court finds that comity does not demand or warrant remand. The Court bases this on two grounds: (1) the fact that the State Defendants have waived any objection to comity, and (2) *Levin*'s holding and reasoning, which are distinguishable from this case.

First, the Court finds two statements from *Levin* to be key: "Comity, we further note, is a prudential doctrine. 'If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system.' " *Levin*, 560 U.S. at 432, 130 S. Ct. at 2335 (quoting *Ohio Bureau of Emp't Servs. v. Hodory,* 431 U.S. 471, 480, 97 S. Ct. 1898 (1977)). Several federal appellate courts have recognized this rule in the context of tax comity. *See Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1134 n. 7 (10th Cir.), *cert. denied*, 137 S. Ct. 591, (2016), *and cert. denied,* 137 S. Ct. 593 (2016) (on remand from the Supreme Court, declining to dismiss case based on comity when the state had

"affirmatively waived reliance on the comity doctrine."); *cf. Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 27 (1st Cir. 2012) (stating that appellant "correctly noted" rule from *Levin* but finding that Puerto Rico's Secretary had not voluntarily consented under the facts of the case). Here, the State Defendants have unambiguously waived any comity concerns through consenting to removal and their various briefing. (*See* Docs 1 at 5, 1-5 at 1–2, 47 at 4–5.) As a result, the Court finds that remand is not warranted.

Plaintiff focuses on the fact that remand is not "demanded" by a voluntary removal and argues that remand is nevertheless within the Court's discretion. Even if remand were still within the Court's discretion, the Court would decline to do so.

It is important to note that *Levin* drew this rule from *Ohio Bureau*, which made the above statement in the context of a discussion of *Younger* abstention. *Ohio Bureau*, 431 U.S. at 479–80, 97 S. Ct. at 1903–04 ("*Younger* and these cited cases express equitable principles of comity and federalism. They are designed to allow the State an opportunity to 'set its own house in order' when the federal issue is already before a state tribunal."). Numerous courts have applied *Ohio Bureau* in the context of *Younger* cases to find that a waiver eliminated any concerns about comity. *See Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n. 9, 104 S. Ct. 3179, 3184, 82 L. Ed. 2d 373 (1984) (noting that "[s]ince the State's Attorney General has thereby agreed to our adjudication of the controversy, considerations of comity are not implicated, and we need not address the merits of the *Younger* abstention claim" (citing *Ohio Bureau*, 431 U.S. at 480, 97 S. Ct. at 1904)); *E.B. v. Verniero*, 119 F.3d 1077, 1092 n. 13 (3d Cir. 1997) ("We have no occasion to review the district court's disposition of the *Younger* abstention issues because the 'State voluntarily chooses to submit to a federal forum.' "); *USX Corp. v. Penn. Dep't of Labor & Indus.*, 643 F. Supp. 1567, 1572 (M.D. Pa. 1986) (concluding, based on

*Ohio Bureau*, that, "since Pennsylvania has also apparently decided to submit the issues raised by plaintiffs for resolution by this court, we need not concern ourselves with *Younger* principles. We conclude that abstention is therefore inappropriate." (citation omitted)). Thus, if the Court accepts the premise that tax comity is guided by the same considerations as *Younger* abstention (which the Supreme Court did in *Levin*), the logical conclusion from the above cases is that, where the State Defendants voluntarily consent to removal, remand based on comity is not appropriate.

Additionally, the Court notes that most of the underlying concerns articulated by *Levin* are not present in this case. It is difficult to imagine the Court "interfer[ing] by prevention with the fiscal operations of the state governments," *Levin*, 560 U.S. at 422, 130 S. Ct. at 2330, when the State Defendants themselves aggressively pursue the involvement of the federal court. Similarly, the Plaintiff has not shown that the "state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law," *id.*, 560 U.S. at 422 n. 2, 130 S. Ct. at 2330, particularly since this case essentially involves the tax benefits for one state contract with one private company. The "collection of revenue" will likely not be "obstructed," as, here, the issue is the validity of tax exemptions; thus, there appears to be little chance of "damage to the State's budget [or] [] a shift to the State of the risk of taxpayer insolvency." *Id.* Thus, aside from the clear and unambiguous statement from *Levin*, the policy reasons underlying tax comity are not advanced when the State Defendants consent to removal.

Plaintiff cites several cases standing for the proposition that the State cannot waive comity in tax cases. *See, e.g., Balazik v. Cty. of Dauphin*, 44 F.3d 209 (3d Cir. 1995) ("the fact that it was the state taxing authorities themselves which removed the case does not alter our

conclusion that the comity rational of *McNary* applies" (citations omitted)). However, these

authorities predate *Levin* and appear to conflict with it in this respect. As a result, the Court does

not find them persuasive.

Even if the Court still had the authority to remand despite a defendant's consent to

removal (as one of Plaintiff's cases finds),[5] the second reason why remand is not appropriate is

the holding and reasoning of *Levin*. By way of factual background, in *Levin*, plaintiff-

respondents were independent marketers ("IMs") that "market[ed] and [sold] natural gas to Ohio

consumers." *Levin*, 560 U.S. at 418–19, 130 S. Ct. at 2328. IMs competed for the sale of natural

gas with local distribution companies (LDCs). *Id.* "Ohio treat[ed] LDCs and IMs differently for

tax purposes" in three ways. *Id.* Respondents filed suit "[a]lleging discriminatory taxation of

IMs and their patrons in violation of the Commerce and Equal Protection Clauses", and they

"sought declaratory and injunctive relief invalidating the three tax exemptions LDCs enjoy and

ordering the Commissioner to stop 'recognizing and/or enforcing' the exemptions." *Id.*, 560 U.S.

at 419, 130 S. Ct. at 2328–29.

The district court ruled that it would not exercise jurisdiction on comity grounds. *Id.* The

Sixth Circuit reversed, relying on a footnote in *Hibbs* which stated that the Supreme Court " 'has

relied upon "principles of comity" to preclude original federal-court jurisdiction only when

plaintiffs have sought district-court aid in order to arrest or countermand state collection.' "

*Levin*, 560 U.S. at 420, 130 S. Ct. at 2329 (quoting *Hibbs*, 542 U.S. at 107 n. 9, 124 S. Ct. 2276).

The Supreme Court reversed. The Court spent time limiting the *Hibbs* footnote and

emphasized that *Hibbs* was "hardly a run-of-the-mine tax case" in part because:"[t]he plaintiffs

---

[5] *See Cox Cable Hampton Roads, Inc. v. City of Norfolk, Va.*, 739 F. Supp. 1074, 1076 (E.D. Va. 1990)
("interpret[ing] [*Ohio Bureau*'s] statement to mean that while federal courts may consider claims which the
principle of comity would ordinarily require be referred to state courts, they may also refuse to entertain suits despite
litigants' desires to waive the principle of comity and proceed in federal court.").

in *Hibbs* were outsiders to the tax expenditure, 'third parties' whose own tax liability was not a relevant factor." *Levin*, 560 U.S. at 430, 130 S. Ct. at 2335. This was opposed to *Levin*, where "the very premises of respondents' suit is that they [were] taxed differently from LDCs" and where the "respondents [did] object to their own tax situation, measured by the allegedly more favorable treatment accorded LDCs" (i.e., competitors). *Id.* After discussing the unique features of *Hibbs*, the Supreme Court stated:

> *Hibbs* held that the TIA did not preclude a federal challenge by a third party who objected to a tax credit received by others, but in no way objected to her own liability under any revenue-raising tax provision. **In context, we clarify, the *Hibbs* footnote comment on comity is most sensibly read to affirm that, just as the case was a poor fit under the TIA, so it was a poor fit for comity.** The Court, in other words, did not deploy the footnote to recast the comity doctrine; it intended the note to convey only that the Establishment Clause-grounded case cleared both the TIA and comity hurdles.

*Levin*, 560 U.S. at 430, 130 S. Ct. at 2335–36 (emphasis added).

> *Levin* then found:

> A confluence of factors in this case, absent in *Hibbs*, leads us to conclude that the comity doctrine controls here. First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. **Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position.** Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options.

*Levin*, 560 U.S. at 431–32, 130 S. Ct. at 2336. The Supreme Court concluded: "Individually, these considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process." *Id.*, 560 U.S. at 432.

Here, the second *Levin* factor is not present. Unlike *Levin*, this case involves a plaintiff who is not "seeking federal-court aid in an endeavor to improve [its] competitive position."

16

*Levin*, 560 U.S. at 431–32, 130 S. Ct. at 2336.  Moreover, unlike *Levin*, Plaintiff's "own tax liability" is "not a relevant factor" in this case.  As in *Hibbs*, Plaintiff is a thirty-party, non-competitor objecting to tax credits received by SPL.  As a result, *Levin* makes clear that, "just as [this case is] a poor fit under the TIA, so it [is] a poor fit for comity[.]"

Indeed, Plaintiff essentially concedes that the second *Levin* factor is not present. While not openly admitting this, Plaintiff states in briefing:

> [S]imilar to *Levin*: Plaintiffs here seek review of commercial and tax matters established in the Louisiana Constitution; the suit does not involve a fundamental right or allege violation of any federal law; and, the state district court is likely better positioned to ascertain and then correct any violation of the Louisiana Constitution found in this instance.

(Doc. 58 at 4.)  Thus, the second Levin factor is conspicuously absent from Plaintiff's analysis, and this is further support for the conclusion that *Levin* is distinguishable from the instant case.

Accordingly, the Court finds that, because the State Defendants have unequivocally consented to removal, comity does not demand remand.  Further, even if the Court had discretion to remand the case, the more appropriate option under *Levin* is to retain jurisdiction.

### B.  Eleventh Amendment and Sovereign Immunity

Defendants maintain that sovereign immunity is not an issue because the State Defendants have waived it, though the State Defendants emphasize that they are waiving any objection to federal jurisdiction and not immunity on the merits of the state-law claims.  Plaintiff maintains that the State Defendants did not unequivocally waive any Eleventh Amendment objection because they reserved their right to assert sovereign immunity at a later time.

Preliminarily, in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 122 S. Ct. 1640 (2002), the Supreme Court "agreed to decide whether a state waives its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to

federal court[,]" at least in "the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.*, 535 U.S. at 617, 122 S. Ct. at 1643 (quotations and alterations omitted).[6]  The Court concluded that "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity[.]" *Id.*, 535 U.S. at 624, 122 S. Ct. at 1646.  The high court further explained: "where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.*, 535 U.S. at 619, 122 S Ct. at 1644 (quoting *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284, 26 S. Ct. 252 (1906) (emphasis added by *Lapides*)).

Here, the State Defendants have expressly consented to suit in this Court (both at the time of removal[7]  and in their briefing on subject matter jurisdiction[8]). As a result, they have "voluntarily become[] a party" to an action in federal court and have taken "affirmative litigation conduct" constituting a waiver of Eleventh Amendment immunity.

---

[6] Of course, while the *Lapides* court said "Eleventh Amendment immunity," the Supreme Court has clarified at other times:

> The Eleventh Amendment makes explicit reference to the States' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amdt. 11. We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden v. Maine*, 527 U.S. 706, 712–13, 119 S. Ct. 2240, 2246–47 (1999).

[7] *See* Docs. 1 at 5 ("Pursuant to [CAFA], the other named defendants, BCI and LDED need not consent for SPL's removal of this putative class action to be proper.  However, BCI and LDED do consent"), 1-5 at 1–2 (State Defendants "hereby give[] notice that [they] consent[] to the removal of this action from state court to federal court").

[8] *See* Doc. 47 at 4–5 ("To the extent the foregoing is unclear, the State Defendants herein again expressly declare their intention to submit this case to the jurisdiction of this Court.").

Moreover, contrary to Plaintiff's argument (Doc. 45 at 9) and as the State Defendants correctly observe, the fact that the State Defendants reserved their right to later assert sovereign immunity from liability does not affect their valid waiver of Eleventh Amendment immunity. In *Meyers ex rel. Benzing v. Tex.*, 410 F.3d 236 (5th Cir. 2005), the Fifth Circuit recognized that "a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately— immunity from suit and immunity from liability." *Id.* at 252–53. The Fifth Circuit "conclude[d] that the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so." *Id.* at 255. The appellate court ended this discussion by stating:

> In sum, under the principles of federal law we have discussed, when Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court. *See Lapides*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806. Whether Texas has retained a separate immunity from liability is an issue that must be decided according to that state's law.

*Id.* at 253, 255. Similarly, this Court leaves the issue of the State Defendants' immunity from liability for another day, but that does not prevent the State Defendants from waiving Eleventh Amendment immunity.

In closing, the Court notes that it asked the parties to brief the applicability of *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900 (1984), "which barred federal courts from exercising pendent jurisdiction over claims alleging that state officials violated state law in carrying out their official responsibilities." *Machete Prods., L.L.C. v. Page,* 809 F.3d 281, 292 n. 8 (5th Cir. 2015) (citing *Pennhurst*, 465 U.S. at 121, 104 S. Ct. 900). However, as SPL correctly argues, the Fifth Circuit has noted that "*Pennhurst* is inapplicable when a state voluntarily waives its sovereign immunity by removing from state to federal court." *Id.* (citing *Meyers*, 410 F.3d at 252). Thus, *Pennhurst* is not an issue here.

In sum, the Court finds that sovereign immunity does not bar this Court from retaining jurisdiction.  This is another basis for denying the Plaintiff's request to remand.

### C.  Declaratory Relief

Lastly, Plaintiff urges the Court to remand based on the discretion it has under the Declaratory Judgment Act.  Plaintiff argues that "considerations of practicality and efficient judicial administration; the functions and limitations of the federal judicial power; traditional principles of equity, comity, and federalism; and, Eleventh Amendment and other constitutional concerns, weigh against exercising jurisdiction in this case[.]" (Doc. 52 at 5; *see also* Doc. 45 at 10.)

SPL argues that "Plaintiff does not ever actually undertake the process of weighing [the above] factors, because none of these factors would prevent this Court from granting appropriate relief to the parties to this lawsuit" under the above analysis. (Doc. 55 at 6.)  All Defendants urge that declining to exercise jurisdiction would be an abuse of discretion absent parallel state and federal proceeding.  SPL points to certain factors the Court should consider on this issue and contends that none of those factors are present here.

"In analyzing whether to decide or dismiss the declaratory judgment suit, the district court [must] follow[] the three steps . . . set out in *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000)." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).  "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Id.* (citation omitted).

Here, the parties do not dispute (or even address) justiciability, and the Court has decided above that it has the authority to decide this case under CAFA (with no bar from the TIA,

comity, or the Eleventh Amendment). Thus, the key question is whether the Court should, in its discretion, dismiss the case or proceed.

In *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Fifth Circuit discussed the appropriate standard to be applied for this inquiry:

> Under the Declaratory Judgment Act, a district court has a measure of discretion in deciding whether to entertain the action. Although "the district court's discretion is broad, it is not unfettered." [*Travelers Ins. Co. v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 778 (5th Cir. 1993)]. For example, the district court may not dismiss declaratory judgment actions " 'on the basis of whim or personal disinclination.' " *Id.* (citation omitted). In addition, "unless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Id.* Relevant factors the district court must consider in determining whether to dismiss a declaratory judgment, include:

>> "1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy," *id.,* and, we hold, whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending

*Id.* at 590–91. The Fifth Circuit later elaborated on these factors as follows:

> The Fifth Circuit uses the *Trejo* factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit. Every circuit has a similar test, although expressed in different terms. Despite the circuits' different expressions of the [*Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495, 62 S. Ct. 1173 (1942),] factors, each circuit's formulation addresses the same three aspects of the analysis.

> The first is the proper allocation of decision-making between state and federal courts. Each circuit's test emphasizes that if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit.

The second aspect of the inquiry is fairness. The circuits' varying formulations all distinguish between legitimate and improper reasons for forum selection. Although many federal courts use terms such as "forum selection" and "anticipatory filing" to describe reasons for dismissing a federal declaratory judgment action in favor of related state court litigation, these terms are shorthand for more complex inquiries. The filing of every lawsuit requires forum selection. Federal declaratory judgment suits are routinely filed in anticipation of other litigation. The courts use pejorative terms such as "forum shopping" or "procedural fencing" to identify a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation. Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."

The third aspect of the analysis is efficiency. A federal district court should avoid duplicative or piecemeal litigation where possible. A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts. Duplicative litigation may also raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues.

The *Trejo* factors clearly address these three categories of issues.

*Sherwin-Williams Co.*, 343 F.3d at 390–91 (footnotes omitted). The Court will now consider each of the *Trejo* factors in turn.

## 1. Pending State Proceeding

" 'The first *Trejo* factor, whether there is a pending state action in which all the matters in the controversy may be litigated, requires the court to examine comity and efficiency.' " *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 166 (5th Cir. 2015) (quoting *Sherwin–Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003)). "It is clear that '[a] district court may decline to decide "a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." ' " *Id.* (quoting *Sherman-Williams*, 343 F.3d at 392 (emphasis omitted) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495, 62 S. Ct. 1173 (1942))). "Although 'the

lack of a pending parallel state court proceeding' does not *per se* require a district court to decide a declaratory judgment action, 'the presence or absence of a parallel state proceeding is an important factor.' " *Id.* (quoting *Sherman-Williams*, 343 F.3d at 394). "The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action." *Sherman-Williams*, 343 F.3d at 394.

Here, this factor weighs in favor of retaining the case. The Court has already decided that comity does not warrant remand. There is no parallel state proceeding, which is an "important factor" that "strengthens the argument against dismissal." Given the lack of any pending state litigation, there is no risk of duplicative or piecemeal litigation, particularly since this Court may decide to allow SPL to re-join the case. While there are no questions of federal law here (which is also an important factor to consider, *Sherman-Williams*, 343 F.3d at 396), the Court still finds that this factor weighs strongly against dismissal.

### 2. Suit Filed in Anticipation of a Lawsuit, Forum Shopping, and Possible Inequities

The next three factors "speak to the fairness aspect" of the *Trejo* analysis—"whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Ironshore*, 624 F. App'x at 167 (quoting *Sherwin-Williams*, 343 F.3d at 391).

As to the second *Trejo* factor (suit filed in anticipation of litigation), the Fifth Circuit has said: "Often, courts find that anticipatory suits weigh in favor of dismissal when the declaratory judgment plaintiff engaged in 'procedural fencing.' " *Id.* (citing *Sherwin-Williams*, 343 F.3d at 397 & n. 7). An example of this would be "where 'the declaratory judgment plaintiff used the federal declaratory judgment statute and the defendant's inability to file an earlier state court suit for the sole purpose of controlling the state law that would apply.' " *Id.* (quoting *Sherwin-Williams*, 343 F.3d at 397).

This factor is not applicable. Again, there is no separate state court proceeding. None of the parties brought this suit into federal court on "improper or unfair grounds" or "in anticipation of a lawsuit being filed," and there is no "procedural fencing" or manipulation of the applicable law here. Consequently, this factor also does not warrant remand.

As to the third *Trejo* factor, there is no indication of forum shopping by either party; indeed, as *Sherwin-Williams* stated: "the fact that 'federal forums are sought by some manufacturers in an attempt to avoid the state court system,' does not necessarily demonstrate impermissible forum selection when the declaratory judgment out-of-state plaintiff invokes diversity. Rather, it states the traditional justification for diversity jurisdiction, to protect out-of-state defendants." *Id.*, 343 F.3d at 399 (citing *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 n. 3 (5th Cir. 1985)).

Lastly, the fourth *Trejo* factor—involving "inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums"—is inapplicable in this case. For the other reasons in this section, the fourth *Trejo* factor also weighs against remand.

### 3. Convenience of the Forum and Judicial Economy

The fifth and sixth factors "primarily address efficiency considerations." *Sherman-Williams*, 343 F.3d at 392. Each of these factors is either neutral or inapplicable. There has been no demonstration that this Court is an inconvenient forum (either generally or compared to the state forum, which is about half a mile away from the federal courthouse) or that judicial economy would be served by remanding the suit to state court. And, again, there is no risk of "piecemeal litigation and duplication of effort in state and federal courts." *Id.* at 391. All of this weighs against remand.

#### 4. State Judicial Decree

The final factor "clearly implicates federalism and comity concerns." *Sherman-Williams*, 343 F.3d at 392. But this case does not involve the interpretation of a state judicial decree. As a result, this factor also weighs against remand. *Ironshore*, 624 F. App'x at 168–69.

#### 5. Summary

Having considered the *Trejo* factors, the Court believes that its discretion is best exercised by retaining this case. As a result, the Court declines to remand based on the Declaratory Judgment Act.

### V.  Conclusion

For the above reasons, the Court finds that it has jurisdiction under CAFA and that remand is not required or appropriate under the TIA, comity, the Eleventh Amendment, or the Declaratory Judgment Act.

Signed in Baton Rouge, Louisiana, on December 4, 2017.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**