# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JMCB, LLC, ON BEHALF OF ITSELF
AND ALL OTHERS SIMILARLY
SITUATED**

                                                    **CIVIL ACTION**

**VERSUS**

                                                  **NO. 17-77-JWD-JCW**

**THE BOARD OF COMMERCE &
INDUSTRY; LOUISIANA
DEPARTMENT OF ECONOMIC
DEVELOPMENT; AND SABINE PASS
LIQUEFACATION, LLC**

## RULING AND ORDER

This matter comes before the Court on three motions: (1) *Sabine Pass Liquefaction, LLC's* ("SPL's") *Motion to Reconsider Order and Vacate Plaintiff's Notice of Voluntary Dismissal or, in the Alternative, Motion to Intervene* (the "Motion to Intervene") (Doc. 22); (2) the *Consolidated Motion for Clarification of the Complaint Pursuant to Federal Rule of Civil Procedure 12(e) or 12(f) and Motion for Joinder of Party Pursuant to Federal Rule of Civil Procedure 12(b)(7) and 19* (the "Motion for Clarification" and "Motion to Join") (Doc. 23) filed by Defendants, the Board of Commerce and Industry (the "Board") and the Louisiana Department of Economic Development (the "LDED") (collectively, the "State Defendants"); and (3) the *Motion to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6)* (the "Motion to Dismiss") (Doc. 14) by the State Defendants. All three motions are opposed (Docs. 20, 30, 31), and reply memoranda have been filed (Doc. 25, 39, 41). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, the Motion to Intervene and Motion to Join are granted. SPL will be joined in this action, either as a necessary and indispensable party under Fed. R. Civ. P. 19 or by intervention (of right or permissive) under Rule 24. The Motion for Clarification is also granted in that Plaintiff is required to file an amended complaint within twenty-eight (28) days of this order to clarify the allegations against all parties. For that reason, the Motion to Dismiss is denied without prejudice; the State Defendants can re-urge these arguments, if necessary, after the Plaintiff has filed its amended complaint.

## I.     Relevant Factual and Procedural Background

Article VII, Section 21(F) of the Louisiana Constitution of 1974 provides that the Board, with approval from the governor, "may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the [B]oard, with the approval of the governor, deem in the best interest of the state." (Doc. 1-2 at 2 (quoting La. Const. art. VII, § 21(F)).) The constitutional provision specifically defines "manufacturing establishment" and "addition to a manufacturing establishment" as follows:

> The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

(*Id.* (quoting La. Const. art. VII, § 21(F)).) Additionally, LDED regulations govern the administration of the exemption. (Doc. 1-2 at 2–3.)

Plaintiff alleges in its Class Action Petition ("Petition") that it "currently owns property (land) in Cameron Parish which is subject to ad valorem taxes for which no exemption is available." (Doc. 1-2 at 7.) The Petition further claims that SPL applied for and entered into a

2

contract with the State Defendants for the above tax exemptions. (Doc. 1-2 at 3–5.) According

to the Petition, a LDED worksheet recommending approval during the process stated that the

contract amount was $6 billion and that the "ad valorem tax was $1,447,200,000". (Doc.1-2 at

4.)

Plaintiff now prays for a judgment declaring that the contract between the State

Defendants and SPL is, for certain reasons, "an improper act of the Board in violation of . . .

Article VII, Section 21(F), and declaring that the Contract is null and void and without legal

effect[.]" (Doc. 1-2 at 12–13.) Specifically, Plaintiff asserts that SPL submitted an application to

LDED that said "that it was applying for an exemption under the 'addition to an existing

manufacturing establishment' provision of [Article VII, § 21(F)], when, in fact, SPL did not have

an existing manufacturing plant or establishment of any kind at the project location at the time

the Board considered its Application". (Doc. 1-2 at 7–8.) Plaintiff also alleges that SPL's facility

does not satisfy the definition of "manufacturing establishment" or "addition" detailed above.

(Doc. 1-2 at 9.)

> Plaintiff brings this action on behalf of itself and as representatives of the following class:
>
> Any and all individuals and businesses that own property in Cameron Parish, State of Louisiana that is subject to ad valorem taxation, and any and all Cameron Parish governmental bodies that are entitled to receive Cameron Parish ad valorem property taxes, as of October 12, 2016.
>
> Specifically excluded from the class are Sabine Pass Liquefaction, LLC, its successors and assigns, and all members of the judiciary, their spouses, and their immediate family members.

(Doc. 1-2 at 10–11.)

Plaintiff originally named SPL as a defendant. (Doc. 1-2.) After the suit was removed

(Doc. 1), Plaintiff filed a notice of dismissal of SPL pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)

(Doc. 16), which this Court granted on April 5, 2017. (Doc. 17.)  The instant motions have

followed.

## II.    Discussion

### A.  Motion to Intervene and Motion to Join

#### 1. Introduction and Summary

SPL and the State Defendants essentially ask that SPL be allowed to join this case, either

as a necessary party under Fed. R. Civ. P. 19 or through intervention (either of right or

permissive) under Rule 24.  State Defendants and SPL thus request that the Court vacate its

earlier order allowing Plaintiff to dismiss SPL.

Plaintiff argues that, when it filed its notice of voluntary dismissal, no order was

necessary; the notice acted automatically and by operation of law.  According to Plaintiff, that

notice of voluntary dismissal in effect bars SPL from joining the action.

Putting aside the questions of whether the notice of dismissal operated automatically

without the need for the order (which it does, *Yesh Music v. Lakewood Church*, 727 F.3d 356,

362 (5th Cir. 2013) (citations omitted)) and the question of whether the Court can vacate that

notice (which it can, *id.* at 362–63), the first key question before the Court is whether a necessary

or indispensable party can be joined despite a notice of dismissal.   The short answer is it can.

The second critical question is whether SPL must or can be joined under Rules 19 or 24.  The

Court finds that joinder is required under either provision based on the plain language of the

rules and relevant case law.

#### 2. Effect of Notice of Voluntary Dismissal

In short, the Court rejects the Plaintiff's argument that its notice of voluntary dismissal

prevents SPL from re-joining the litigation.  Plaintiff cites *American Cyanamid Co. v. McGhee*,

4

317 F.2d 295 (5th Cir. 1963), among others, for the proposition that "a dismissal under Rule

41(a)(1)(A)(i) is 'a matter of right running to the plaintiff and may not be extinguished or

circumscribed by adversary or court.' " (Doc. 31 at 2 (quoting *McGhee*, 317 F.2d at 297).)  But

the "single issue [in *McGhee*] [was] whether a voluntary dismissal by order of court after an

initial voluntary dismissal of the same suit by notice in a state court bars the filing of a third suit

in federal court under the provisions of Rule 41(a)[.]" *Id.*, 317 F.2d at 296.  *McGhee* contained

no discussion of indispensable parties.

Plaintiff is correct that it has an interest in controlling the case, but, under Rule 19, this is

not the only issue in play:

> As the Fifth Circuit indicated in Schutten v. Shell Oil Company, [421 F.2d 869 (5th
> Cir. 1970)], the essence of Rule 19 is to balance the rights of all those whose
> interests are involved in the action.
>
>> The plaintiff has the right to "control" his own litigation and to
>> choose his own forum. This "right" is, however, like all other rights,
>> "defined" by the rights of others. Thus the defendant has the right to
>> be safe from needless multiple litigation and from incurring
>> avoidable inconsistent obligations. Likewise the interests of the
>> outsider who cannot be joined must be considered. Finally there is
>> the public interest and the interest the court has in seeing that insofar
>> as possible the litigation will be both effective and expeditious. [*Id.*
>> at 873.][1]

7 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1602 (3d ed. 2017).

Wright & Miller thus recognizes: "Compulsory joinder is an exception to the general practice of

giving plaintiff the right to decide who shall be the parties to a lawsuit." *Id.*  "Although a court

must take cognizance of this traditional prerogative in exercising its discretion under Rule 19,

---

[1] As Plaintiff argues, *Schutten* said this when "deciding whether 'in equity and good conscience' the court should
proceed without a person whose joinder is impossible." *Schutten*, 421 F.2d at 873. (Doc. 31 at 9).  That is, *Shutten*
was talking about the Rule 19(b) analysis.  But Wright & Miller appears to correctly recognize that these interests
underlie Rule 19 as a whole, and the Court agrees with that assessment.  Moreover, as will be shown below, this
Court will conduct a Rule 19(b) analysis and determine whether the case can proceed without SPL.  In short, it
cannot.

plaintiff's choice will have to be compromised when significant countervailing considerations make the joinder of particular absentees desirable." *Id.* "[T]hese factors include: "(1) the interests of the present defendant; (2) the interests of potential but absent plaintiffs and defendants; [and] (3) the social interest in the orderly, expeditious administration of justice." *Id*. Thus, Plaintiff's attempt to have its notice of dismissal trump all other considerations is directly contrary to these principles, all of which weigh strongly in favor of SPL joining the case.

Additionally, case law shows that the State Defendants and SPL have the stronger argument here. "The exception to [the] general principle [that a Rule 41(a)(1) notice of dismissal can dismiss a single defendant] is that a defendant may not be dismissed if it is an indispensable party whose joinder is required by Fed. R. Civ. P. 19." *Eckinger v. Xpress Glob. Sys., Inc.*, No. 15-3147, 2016 WL 738206, at *2 (D. Neb. Feb. 23, 2016) (citing *Eniola v. Leasecomm Corp.*, 214 F. Supp. 2d 520 (D. Md. 2002)) (finding that defendant at issue was "not a necessary party so as to bar dismissal"). Other cases have discussed the "maxim that Rule 41(a)(1) may not properly be used to dismiss an indispensable party". *Frank v. Trilegiant Corp.*, No. 10-5211, 2012 WL 214100, at *4–*5 (E.D.N.Y. Jan. 24, 2012) (ordering additional briefing on whether three persons "are indispensable parties under Rule 19, such that their dismissal from the litigation would be improper pursuant to Rule 41(a)(1)."). Still another has observed that, while a plaintiff is "entitled as a matter of course" to voluntarily dismiss himself, "[t]he only barrier to doing so . . . would be a finding of his indispensability under Rule 19". *Smith v. Green Tree Servicing, LLC*, No. 09-710, 2010 WL 1050350, at *3 (S.D.W. Va. Mar. 18, 2010) (ultimately concluding that a plaintiff dismissing his action was not an indispensable party).

One case found that, when plaintiff had voluntarily dismissed an indispensable party, the "obvious and appropriate remedy [wa]s joinder," *Nogueras-Cartagena v. Rosello-Gonzalez*, 182

6

F.R.D. 380, 385 (D.P.R. 1998) (citation omitted). *See also Glob. Detection & Reporting, Inc. v. Securetec Detektions-Systeme AG*, No. 08-5441, 2008 WL 5054728, at *1 (S.D.N.Y. Nov. 21, 2008) ("GDR has attempted to moot the motion to dismiss by dismissing Securetec U.S. from the litigation without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1). But this effort fails. Dismissal of a party cannot restore diversity jurisdiction where that party is 'indispensable' to the litigation." (citation omitted)).

Other cases (some of which have been noted above) have recognized this rule but have simply had no need to apply it because the person sought to be dismissed was not an indispensable party. *See Haase v. Mallenkrodt, Inc.*, 415 F. Supp. 889, 890 n. 1 (S.D.N.Y. 1976) ("Since Permutit Company, Inc. is not an indispensable party, its removal is both appropriate and sufficient to assure the requisite diversity among the remaining parties"); *Brown v. Texas & P. R. Co.*, 392 F. Supp. 1120, 1123–24 (W.D. La. 1975) (stating that "[a] federal district court has the power to preserve and perfect is diversity jurisdiction over a case by dropping a nondiverse party providing the nondiverse party is not an indispensable party whose presence in the action is required under Rule 19," and finding that it would be an abuse of discretion in that case to prevent plaintiff from exercising the right to remove nondiverse defendant). All of these decisions confirm what Wright & Miller stated: "Compulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit." Wright & Miller, *Federal Practice and Procedure* § 1602.

Plaintiff attacks *Eckinger* on the grounds that its authority, *Enjola*, reached the opposite holding, but this is not so. Plaintiff is correct that, in *Enjola*, two defendants (Leasecomm and Bank) opposed the dismissal of a third defendant (Nworgu) on the grounds that he was a

necessary party. *Id.*, 214 F. Supp. 2d at 523. In rejecting the argument, the district court

explained:

> Fed. R. Civ. P. 41(a)(1) states, in pertinent part: "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service of the adverse party of an answer or of a motion for summary judgment, whichever first occurs...." While Leasecomm and Bank seek to oppose this motion to dismiss pursuant to Fed. R. Civ.P. 19(b) on the ground that Nworgu is an indispensable party, Plaintiffs may dismiss Nworgu by right under Rule 41(a)(1) and do not need leave of court to do so. In effect, the dismissal took place when the motion was filed. Accordingly, the oppositions filed by Leasecomm and Bank are moot and Plaintiffs' motion to dismiss Nworgu will be granted.

*Id.* However, what the State Defendants correctly argue is that the *Enjola* court specifically

noted that Nworgu was *not* an *indispensable* party and that jurisdictional defects can be cured by

the dismissal of *dispensable* parties:

> Bank argues in its motion to dismiss, and the court recognizes, that, because both Nworgu and Plaintiffs are Maryland residents, there was not complete diversity at the time the case was filed. In a diversity case, diversity must be complete for the court to have subject matter jurisdiction. *Strawbridge v. Curtiss,* 7 U.S. 267, 3 Cranch 267, 2 L. Ed. 435 (1806). However, jurisdictional defects may be cured and complete diversity established before trial commences by the dismissal of dispensable nondiverse parties. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S. Ct. 2218, 104 L.Ed.2d 893 (1989), *citing* Fed. R. Civ. P. 21; *see also Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 73, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996). In light of the previous lawsuits involving the same transaction and occurrence, and the decision on the merits by the Massachusetts state court, Defendants cannot argue that Nworgu is an indispensable party to this suit. Therefore, the jurisdictional defect has now been cured by Nworgu's dismissal.

*Eniola*, 214 F. Supp. 2d at 523 n. 2. Thus, it is likely this footnote that *Eckinger* was referring to,

and it in fact supports the position of that (and this) Court.

Thus, based on these cases, the critical question is whether SPL is an indispensable party.

"A party is indispensable if it is both 'necessary' under Fed. R. Civ. P. Rule 19(a) and

indispensable to the action under Rule 19(b)." *Glob. Detection & Reporting*, 2008 WL 5054728,

at *1 (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir.

1996)); *see also Siemens Bldg. Techs., Inc. v. Jefferson Par.*, No. 03-2272, 2004 WL 1837386, at

*4 (E.D. La. Aug. 16, 2004) (explaining that a party who satisfies the requirements of Rule 19(a)

is a "necessary" party while Rule 19(b) governs whether a necessary party is "indispensable"

(citing Fed. R. Civ. P. 19(a), (b))).  The Court now turns to this question.

### 3. Indispensable Party

#### a.  Rule 19 Standard

Rule 19(a), entitled "Persons Required to Be Joined if Feasible," provides in

relevant part:

> (1) Required Party. A person who is subject to service of process and whose joinder
> will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> . . . (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may: (i) as a practical
> matter impair or impede the person's ability to protect the interest;

Fed. R. Civ. P. 19(a)(1)(B)(i).  The Court notes, as the State Defendants did, that this rule is

written in the mandatory; a necessary party "must be joined". *Id.*  Rule 19(a)(1)(B)(i)

"recognizes the importance of protecting the person whose joinder is in question against the

practical prejudice to him which may arise through a disposition of the action in his absence."

Fed. R. Civ. P. 19, Notes of Advisory Committee on Rules—1966 Amendment.

Rule 19(b) provides:

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible
> cannot be joined, the court must determine whether, in equity and good conscience,
> the action should proceed among the existing parties or should be dismissed. The
> factors for the court to consider include: (1) the extent to which a judgment rendered
> in the person's absence might prejudice that person or the existing parties; (2) the
> extent to which any prejudice could be lessened or avoided by: (A) protective
> provisions in the judgment; (B) shaping the relief; or (C) other measures; (3)
> whether a judgment rendered in the person's absence would be adequate; and (4)
> whether the plaintiff would have an adequate remedy if the action were dismissed
> for nonjoinder.

Fed. R. Civ. P. 19(b).

The Fifth Circuit recognizes that "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). A related provision, Rule 12(b)(7), allows for dismissal for "failure to join a party under Rule 19." *Id.* As the Fifth Circuit has stated:

> Rule 12(b)(7) analysis entails two inquiries under Rule 19. The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation.

*Id.* at 439. "The burden [on a Rule 12(b)(7) motion] is on the party raising the defense to show that the person who was not joined is needed for a just adjudication." 7 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609 (3d ed. 2017). Nevertheless:

> [W]hen an initial appraisal of the facts reveals the possibility that an unjoined party whose joinder is required under Rule 19 exists, the burden devolves on the party whose interests are adverse to the unjoined party to negate this conclusion and a failure to meet that burden will result in the joinder of the party or dismissal of the action.

*Id.* Ultimately, Rule 19 recognizes that, "[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made." Fed. R. Civ. P. 19, Notes of Advisory Committee on Rules—1966 Amendment.

### b. Rule 19(a): Necessary Party Analysis

Here, SPL certainly has an "interest relating to the subject of the action[.]" Plaintiff seeks to invalidate a contract between the State Defendants and SPL on the grounds that it is unconstitutional. If successful, SPL will lose their property tax exemptions and face over a billion dollars in additional tax liability, after SPL spent billions building a facility allegedly in reliance on those exemptions.

Additionally, deciding the case in SPL's absence would, "as a practical matter impair or impede [SPL's] ability to protect the interest[.]"  If SPL were excluded from this case, SPL would essentially be at risk of losing its rights under the contract without any ability to voice an objection.  Such a situation would be manifestly unjust and certainly qualify as an impairment or impediment to protecting its interest.

As a result, the Court finds that the requirements for joinder under Rules 19(a) have been met.  Thus, if the notice of voluntary dismissal is not a bar, then SPL must be joined in the case.  To answer this question, the Court will look at whether SPL is an indispensable party under Rule 19(b).  The Court notes a Rule 19(b) analysis is usually done only when joinder under Rule 19(a) would result in the loss of subject matter jurisdiction.  This is not the case here.  Nevertheless, the Court believes that the above cases reflect that this discussion is at least advisable (and potentially required) when there has been a notice of voluntary dismissal.

### c. Rule 19(b): Indispensable Party Analysis

Again, under Rule 19(b), the Court must determine whether "in equity and good conscience, the action should proceed" in light of the following four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Here, the Court finds that SPL is indispensable.  A judgment rendered in SPL's absence would be extraordinarily prejudicial to it, and the Court sees little way of lessening that prejudice.  Further, the Court believes that a judgment rendered without SPL would be inadequate, as SPL is not a party to this case and could bring its own action seeking to validate

11

the contract.  The fourth factor is not really an issue, as SPL can be joined in this suit without

depriving the Court of subject matter jurisdiction.  Further, even if the fourth factor did weigh in

Plaintiff's favor, it would not outweigh the other factors.  Consequently, the Court concludes

that, in equity and good conscience, this suit cannot proceed without SPL as a party.

Case law supports the Court's conclusion.  As SPL argued in briefing, the Eastern

District of Louisiana concisely summarized the position of courts on this issue:

> "[I]n an action to set aside a contract, all persons who are parties to the contract
> may be affected by the determination of the action and are indispensable parties for
> the purposes of Rule 19." *Niagra Mohawk Power v. Tonawanda Band,* 862 F. Supp.
> 995 (W.D.N.Y. 1994) *aff'd,* 94 F.3d 747 (2nd Cir. 1996). Federal courts
> consistently hold that a party to an agreement in dispute is an indispensable party
> under F. Rule Civ. P. 19(a) in a suit seeking to rescind, annul, or interpret that
> agreement. *See, e.g., Niagra Mohawk Power,* 862 F. Supp. 995; *Lomayaktewa v.
> Hathaway,* 520 F.2d 1324, 1325 (9th Cir. 1975) *cert denied,* 424 U.S. 903, 96 S.
> Ct. 1492 (1976); *Moore v. Ashland Oil,* 901 F.2d 1445 (7th Cir. 1990); *The
> Torrington Co. v. Youst,* 139 F.R.D. 91 (Dist. S.C. 1990); *Denkmann Assoc. v..
> International Paper Co.,* 132 F.R.D. 168 (M.D. La. 1990).

*Siemens Bldg. Techs., Inc.*, 2004 WL 1837386, at *6 ("In essence, Siemens seeks a declaration

that the contract between JCI and the Parish is null and void. The Court finds that JCI is an

indispensable party that must be joined pursuant to Rule 19."); *see also* 7 Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1613 (3d ed. 2017) ("In cases seeking

reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all

parties to the contract probably will have a substantial interest in the outcome of the litigation

and their joinder will be required.").  Thus, case law confirms the Court's interpretation of the

rules.

Plaintiff responds that "this case is unique and distinguishable" because it concerns a

taxpayer challenge to a tax exemption "merely memorialized in a contract." (Doc. 31 at 9–10.)

But, Plaintiff cites to no authority for this argument.  Further, the heart of this dispute is whether

SPL's contract with the State Defendants is invalid so as to subject SPL to about $1.4 billion in

additional taxes it contracted out of.  It defies logic to hold that the general rule does not apply in

this situation.

### d.  Summary

Accordingly, SPL and the State Defendants have demonstrated that SPL must be joined

in this case.  The Court's previous order dismissing SPL (Doc. 17), even though unnecessary to

begin with, was, under these peculiar circumstances, manifestly unjust, and the Court will thus

vacate it. *See Yesh Music*, 727 F.3d at 363.  Similarly, the Plaintiff's notice of dismissal (Doc.

16) will be set aside.  SML will be joined in this action.

### 4. Intervention

### a.  Rule 24(a) Standard

As SPL correctly argues, intervention is an additional ground for joining SPL.  Fed. R.

Civ. P. 24(a), entitled "Intervention of Right," provides in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims
> an interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless existing parties adequately
> represent that interest.

The Court notes, as SPL did, that this rule is also written as mandatory; the Court "must permit

anyone to intervene" who satisfies the requirements of the rule. *Id.*  Those four requirements are:

>  (1) The application must be timely; (2) the applicant must have an interest relating
> to the property or transaction that is the subject of the action; (3) the applicant must
> be so situated that the disposition of the action may, as a practical matter, impair or
> impede its ability to protect its interest; and (4) the applicant's interest must be
> inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (citing *Sierra Club v. Espy,* 18 F.3d 1202,

1204–05 (5th Cir. 1994)). "Although the movant bears the burden of establishing its right to

intervene, Rule 24 is to be liberally construed."  *Id.* (citation omitted).  "The inquiry is a flexible

one, and a practical analysis of the facts and circumstances of each case is appropriate." *Id.*

(citations and quotations omitted).  The Fifth Circuit precedent recognizes a "broad policy

favoring intervention[.]" *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d

562, 569 (5th Cir. 2016).

### b.  First Requirement under Rule 24(a): Timeliness

First, SPL's motion was timely.  "The timeliness inquiry is contextual; absolute measures

of timelines should be ignored." *Wal–Mart Stores*, 834 F.3d at 565 (citations and quotations

omitted).  "Timeliness is not limited to chronological considerations but is to be determined from

all the circumstances." *Id.* (citations and quotations omitted).  The Fifth Circuit has stated:

> "Determining the timeliness of a motion to intervene entails consideration of four
> factors: (1) The length of time during which the would-be intervenor actually knew
> or reasonably should have known of its interest in the case before it petitioned for
> leave to intervene; (2) the extent of the prejudice that the existing parties to the
> litigation may suffer as a result of the would-be intervenor's failure to apply for
> intervention as soon as it knew or reasonably should have known of its interest in
> the case; (3) the extent of the prejudice that the would-be intervenor may suffer if
> intervention is denied; and (4) the existence of unusual circumstances militating
> either for or against a determination that the application is timely." . . . We . . . have
> "rejected the notion that the date on which the would-be intervenor became aware
> of the pendency of the action should be used to determine whether it acted
> promptly," and have held that "[a] better gauge of promptness is the speed with
> which the would-be intervenor acted when it became aware that its interests would
> no longer be protected by the original parties."

*Swoboda v. Manders*, 665 F. App'x 312, 314 (5th Cir. 2016) (quoting *Sierra Club*, 18 F.3d at

1205).

Here, SPL made its motion less than three weeks after the Court's order dismissing it

from the case. (*See* Docs. 16, 17, 22.)  Plaintiff has failed to make a convincing showing of

prejudice from SPL's slight delay, while SPL's prejudice if left out of the case would be

extremely high.  By any measure, SPL acted promptly "when it became aware that its interests

14

would no longer be protected by the original parties." *Swoboda*, 665 F. App'x at 314 (finding that

motion to intervene was "not unreasonable" and "timely under the circumstances of this case"

when made forty-five days after intervenor "became aware that its privilege would not be

protected" by another party). In short, the motion to intervene was timely.

### c. Second and Third Requirements under Rule 24(a): SPL's Interest in the Case and Impairment of that Interest.

As to the second and third requirement for intervention, again, "the applicant must have

an interest relating to the property or transaction that is the subject of the action," and "the

applicant must be so situated that the disposition of the action may, as a practical matter, impair

or impede its ability to protect its interest." *Brumfield*, 749 F.3d at 341 (citation omitted). Under

Rule 24(a), "an applicant is entitled to intervene in an action when his position is comparable to

that of a person under Rule 19(a)(2)(i),[2] as amended, unless his interest is already adequately

represented in the action by existing parties." Fed. R. Civ. P. 24, Notes of Advisory Committee

on Rules—1966 Amendment. Thus, the second and third requirement are essentially the same as

the Rule 19(a) analysis. For the same reasons articulated above, the Court finds that these

prerequisites for intervention have been met.

### d. Fourth Requirement under Rule 24(a): Adequacy of State Defendants Representing SPL

Lastly, SPL's interest is not adequately represented by the State Defendants. "The

applicant has the burden of demonstrating inadequate representation, but this burden is

'minimal.' " *Brumfield*, 749 F.3d at 345 (citation omitted). "This requirement, however, must

have some teeth, so there are two presumptions of adequate representation." *Id.* (citation

omitted). While the first presumption is not implicated here, "[t]he second presumption arises

---

[2] The current version of Rule 19(a)(1)(B)(i) mirrors the old Rule 19(a)(2)(i). *Compare* Fed. R. Civ. P. 19(a)(1)(B)(i) (2017), *with Schutten v. Shell Oil Co.*, 421 F.2d 869, 871 (5th Cir. 1970) (quoting Fed. R. Civ. P. 19(a)(2)(i) (1966)).

when the would-be intervenor has the same ultimate objective as a party to the lawsuit, in which event the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (citations and quotations omitted).

SPL points to several cases providing support for allowing SPL to intervene, but the Court finds two particularly convincing. First, in *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016), a trade group ("Association") sought to intervene in a lawsuit between Wal-Mart and the Texas Alcoholic Beverage Commission. *Id.* at 564. Wal-Mart claimed that the "regulatory system administered by the Commission operate[d] exclusively for the benefit of the Association's members" in violation of various constitutional provisions. *Id.* The Association sought "to intervene in defense of the regulatory system." *Id.* In reversing the denial of the Association's motion to intervene, the Fifth Circuit discussed the adequacy requirement, stating:

> Even assuming, *arguendo*, that either of the two presumptions of adequate representation applies, the Association has shown "adversity of interest" and "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." [(citation omitted).] The Association has offered several reasons that the Commission's representation may be inadequate. The Commission seeks to defend all portions of the litigation, which limits the range of arguments it can advance, while the Association does not seek to defend the Hotel Exception. The Association intends to seek a declaratory judgment that the regulatory scheme is constitutionally valid; the Commission merely seeks to defend the present suit and would accept a procedural victory. The Association argues that its interests—protecting its members' businesses—are narrower than the Commission's broad public mission. It highlights arguments that the Commission cannot make given the differences in the objectives of the Commission and the Association. Given the broad policy favoring intervention in our precedent, we are satisfied that the Association has demonstrated that it may be inadequately represented in the lawsuit.

*Wal-Mart Stores,* 834 F.3d at 569.

Similarly, in *Brumfield*, the Fifth Circuit found that the "second presumption [did] not apply", explaining:

> [I]n *Sierra Club* we bolstered our reasoning by noting that "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry," and therefore the timber groups satisfied the minimal burden of showing inadequacy.
>
> Although a private group does not always satisfy this prong just because a governmental entity is on the same side of an issue, in this case the parents have easily met their minimal burden. The state has many interests in this case— maintaining not only the Scholarship Program but also its relationship with the federal government and with the courts that have continuing desegregation jurisdiction. The parents do not have the latter two interests; their only concern is keeping their vouchers. We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires.

*Brumfield*, 749 F.3d at 346 (reversing denial of motion to intervene of right).

The same reasoning applies here. Contrary to Plaintiff's arguments, the State Defendants and SPL may not have completely aligned interests. In the motion to dismiss filed by SPL before its dismissal (Doc. 15), SPL made different arguments than the State Defendants did in their motion to dismiss, and differing arguments was a factor in *Wal-Mart*. (Doc. 14.) But even more importantly, as in *Brumfield* and as SPL contends, the State Defendants are concerned with the administration of their tax program generally whereas SPL is directly invested in ensuring that these particular tax exemptions remain in effect. SPL stands to lose over a billion dollars if Plaintiff prevails; the State Defendants may have no monetary loss.

In sum, at the very least, SPL and the State Defendant's interests "might" differ, and that "is all that the rule requires." *Brumfield*, 749 F.3d at 346. For these reasons, the fourth requirement is satisfied, particularly given the "minimal" burden and the "broad policy favoring intervention". All four prerequisites for intervention of right have thus been met.

### e. Effect of Notice of Voluntary Dismissal (Revisited)

The Court also finds that Plaintiff's voluntary dismissal of SPL does not bar SPL from intervening as a matter of right. First, as stated above, Rule 24(a) is written in mandatory language; the Court "must permit anyone to intervene" who satisfies the requirements of the rule. Fed. R. Civ. P. 24(a). Second, the Fifth Circuit has stated that "[t]he effect of a Rule 41(a)(1) dismissal is to put the plaintiff in a legal position as if he had never brought the first suit." *Yesh Music*, 727 F.2d at 359 (quoting *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005)). By Plaintiff's reasoning, a notice of voluntary dismissal would in fact put Plaintiff in a *better* position than he otherwise would have been, as this would preclude the joinder of parties entitled to intervene as a matter of right. As a result, the Court finds that SPL should join the case—not only as an indispensable party under Rule 19 but also through intervention of right under Rule 24(a).

### f. Additional Ground: Permissive Intervention under Rule 24(b)

Additionally, the Court finds that SPL may also intervene under Rule 24(b), entitled "Permissive Intervention." This section provides in relevant part: "On timely motion, the court may permit anyone to intervene who: (1) . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, SPL has a claim and/or defense that shares with this case a common question of law or fact: the validity of SPL's contract with the State Defendants. Plaintiff will not be unduly prejudiced by SPL's involvement in the case; indeed, it is difficult to see any undue prejudice to Plaintiff by SPL intervening in the case when Plaintiff initially brought suit against SPL. These

proceedings (which are still relatively new) will hardly be delayed.  And, again, Plaintiff cannot be in a better position than it otherwise would have been without the voluntary dismissal, so it cannot bar SPL from intervening permissively.  Consequently, the Court will allow SPL to intervene on this alternative ground.

### B.  Motion for Clarification

State Defendants argue that Plaintiff needs to clarify its petition and identify what claims remain after Plaintiff's dismissal of SPL.  Though Plaintiff states in the status report that its only claim is to nullify the contract at issue, the State Defendants contend that this is not reflected in the Petition.  Plaintiff responds that its claim for damages has now been eliminated but that "all other claims and causes of action for declaratory relief remain[] against the State Defendants." (Doc. 30 at 2.)  State Defendants retort that the presence of dismissed claims in the Petition means that the Court should order the Petition to be amended.

The Court agrees with the State Defendants.  Since SPL has now re-joined the suit, the Court believes that Plaintiff should file a First Amended Complaint identifying what precise claims are still in the case, including what claims remain against SPL.  The Court believes this is appropriate given the shifting procedural posture of the litigation and the confusion surrounding the pleadings.

### C.  Motion to Dismiss

In light of the Plaintiff's upcoming amended complaint, the State Defendant's *Motion to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6)* will be dismissed without prejudice.  State Defendants may re-urge the same arguments, if necessary, after Plaintiff submits its amended complaint.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that *Sabine Pass Liquefaction, LLC's Motion to Reconsider Order and Vacate Plaintiff's Notice of Voluntary Dismissal or, in the Alternative, Motion to Intervene* (Doc. 22), and the State Defendant's *Consolidated Motion for Clarification of the Complaint Pursuant to Federal Rule of Civil Procedure 12(e) or 12(f) and Motion for Joinder of Party Pursuant to Federal Rule of Civil Procedure 12(b)(7) and 19* (Doc. 23) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's notice of voluntary dismissal (Doc. 16) is **SET ASIDE**, and the Court's April 5, 2017, order dismissing SPL from this case (Doc. 17) is **VACATED**.

**IT IS FURTHER ORDERED** that SPL will be joined in this action as a defendant either as a necessary and indispensable party under Rule 19 or through intervention (of right and permissive) under Rule 24.

**IT IS FURTHER ORDERED** that Plaintiff is given twenty-eight (28) days in which to file an amended complaint clarifying the claims against the parties.

**IT IS FURTHER ORDERED** that the State Defendant's *Motion to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6)* (Doc. 14) is **DENIED WITHOUT PREJUDICE**.  The State Defendants may re-urge their objections, if necessary, after the Plaintiff files its amended complaint.

Signed in Baton Rouge, Louisiana, on <u>December 5, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**