UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JMCB, LLC, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED** | **DOCKET NO. 17-00077** |
| **VERSUS** | **JUDGE DEGRAVELLES** |
| **THE BOARD OF COMMERCE & INDUSTRY; LOUISIANA DEPARTMENT OF ECONOMIC DEVELOPMENT; AND, SABINE PASS LIQUEFACTION, LLC** | **MAGISTRATE WILKINSON** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**FIRST AMENDING
CLASS ACTION COMPLAINT**

**NOW INTO COURT**, comes Plaintiff, JMCB, LLC, on behalf of itself and on behalf of all others similarly situated, which respectfully files this First Amending Class Action Petition as ordered by the Court (Doc. 57), and respectfully represents:

1.  Made defendants herein are: The Board of Commerce and Industry (hereinafter "Board"); Louisiana Department of Economic Development (hereinafter "LDED"); and, Sabine Pass Liquefaction, LLC, (hereinafter "SPL"), a foreign limited liability company domiciled in Delaware which initially qualified to do business in Louisiana on July 1, 2010 (collectively "Defendants").

2.  Ad valorem taxes (also known as "property taxes") in Louisiana are established at Article VII, Section 18 of the Louisiana Constitution of 1974. The classifications of property subject to ad valorem taxation in Louisiana are as follows: land; improvements for residential purposes; electric cooperative properties, excluding land; public service properties, excluding land; and, other property.

3.  Some property in Louisiana is exempt from ad valorem taxation. The homestead exemption is a popular exemption from ad valorem taxation, found at Article VII, Section 20 of the Louisiana Constitution of 1974, and other property exemptions are found at Article VII, Section 21 of the Louisiana Constitution of 1974. In addition to the homestead exemption, only the property listed in Article VII, Section 21 of the Louisiana Constitution of 1974 is exempt from ad valorem taxation and no other.

4. This case involves the property exemption found at Article VII, Section 21(F) of the Louisiana Constitution of 1974. The text of this constitutional provision provides, in pertinent part, as follows:

> **Section 21**. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
>
> ….
>
> (F) Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.
>
> The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.
>
> The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

5. As noted above in the constitutional provision, as an inducement for manufacturers to build new manufacturing plants or to build additions to existing manufacturing plants in Louisiana, Article VII, Section 21(F) of the Louisiana Constitution of 1974 authorizes the State of Louisiana and the Board, with the approval of the governor of Louisiana, to exempt new manufacturing establishments or additions to existing manufacturing establishments from ad valorem taxes on such terms as the Board deems in the best interest of the State.

6. The rules for the Industrial Ad Valorem Tax Exemption Program are contained in the Louisiana Administrative Code at Title 13, Chapter 5. In order to apply for the exemption, an advance notification form must be filed with LDED prior to the beginning of construction or installation of facilities. An application must also be filed with LDED during the prescribed time period allowed by the rules. According to the rules, eligibility of the applicant and the property for the exemption is reviewed by the Board based upon the facts and circumstances existing at the time the application is considered. An application filed prior to completion of construction may be considered

by the Board and a contract may be executed based upon the best available estimates of the values of the buildings, equipment and machinery to be made part of the facility, subject to review and approval of the Project Completion Report and Affidavit of Final Cost.

7. Assuming the Board votes to approve the exemption request, the exemption itself is evidenced by a written contract that is signed by the governor of Louisiana, the Board, and the applicant/manufacturer. As noted in the constitutional provision, any exemption granted is for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no ad valorem taxes shall be collected thereon during the period of exemption.

8. On or about April 15, 2011, SPL, through its consultant, Didier Consultants, Inc., of Zachary, Louisiana, submitted an Industrial Ad Valorem Tax Exemption Program Application ("Application") and an Advance Notification form to LDED for the purpose of applying for an ad valorem tax exemption provided for at La. Const. art. VII, § 21(F). The Application and the Advance Notification form stated that the project's physical address and actual location was 9243 Gulf Beach Highway, Cameron, Louisiana. In the "Product Manufactured" section of the Application, SPL inserted: "Liquefied Natural Gas." In the "Manufacturing Process" section of the Application, SPL inserted the following as a description of its purported manufacturing process: "The manufacturing process begins with natural gas, which is 'worked' into a new quality and combination to matter, defined as liquefied natural gas, by means of an artificial process." The Application further suggested that SPL's investment amount in the project, to be considered for the exemption, would be $6,000,000,000.

9. The Application indicated that the project type was an "addition to an existing plant," and the Advance Notification form indicated that the project type was an "expansion," thus implying that SPL had an existing plant or establishment at the project location and that SPL was applying for an exemption under the "addition to an existing manufacturing establishment" portion of the constitutional provision.

10. Upon information and belief, Plaintiff avers that SPL did not have an existing manufacturing plant or establishment of any kind at the project location (9243 Gulf Beach Hwy., Cameron, Louisiana) at the time that SPL's Application was considered by the Board, and was not engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process. In fact, upon information and belief, construction on SPL's facility did not begin until August 2012 - well after the Application was considered by the Board.

11. On or about April 18, 2011, LDED mailed a letter to SPL, through Didier Consultants, Inc., stating that it had received the documentation regarding SPL's project. LDED assigned Application Number 20110659-ITE to SPL's proposed project.

12. On or about April 21, 2011, LDED staff sent an email to Didier Consultants, Inc., stating, *inter alia*, that after several discussions internally about the proposed project, that the consensus is that "the manufacturing process as stated does not meet the qualification of manufacturing. If all the company is doing is taking natural gas and freezing it, that has not been considered manufacturing by the department or the board. However, if they are doing additional processing of the natural gas prior to the freezing, then it could be considered manufacturing. Please get a better description of the manufacturing process so that we can make a determination."

13. Upon information and belief, SPL did provide further information to LDED about its purported manufacturing process; however, Plaintiff shows that even that provided information confirmed that SPL's process does not meet the qualification of manufacturing under the constitutional provision. As initially suspected by LDED, SPL's process simply takes natural gas and freezes it until it turns into liquid form.

14. Upon information and belief, the description of its proposed process in the Application and the additional information provided comprises all of the descriptions and information SPL provided to LDED about its process, and the Board did not conduct any independent investigation into whether SPL's process qualified as manufacturing under the constitutional provision.

15. On or about June 8, 2011, LDED mailed a letter to SPL, through Didier Consultants, Inc., stating that the Application would be considered by the Board at its

meeting on June 28, 2011. Despite the fact that LDED's staff correctly questioned whether SPL's stated process met the qualifications of manufacturing, and despite receiving further information from SPL that confirmed that its process did not meet the qualifications of manufacturing, LDED enclosed with the letter a work sheet containing LDED's staff's unreasonable recommendation of "approval" relative to the Application. Specifically, the work sheet is dated May 24, 2011, and noted that: the company name is "Sabine Pass Liquefaction, LLC"; the project type is "expansion"; the contract amount was "$6,000,000,000"; the ad valorem tax was "$1,447,200,000"; and, the staff recommends "approval." The comments section of the work sheet also referred to the contract as a "front end contract."

16.  On or about July 19, 2011, LDED mailed a letter to SPL, through Didier Consultants, Inc., stating that the Board voted to approve SPL's request for tax exemption on the estimated $6,000,000,000 investment amount at its July 18, 2011 meeting. The letter stated that the initial contract is for a period of five (5) years with a provision for an additional five (5) years of exemption, assuming compliance with all provisions of the contract and the rules governing the tax exemption program. The letter further stated that this would be a "Front End" contract and as such had the additional requirement of the filing of an Annual Status Declaration for Advance Contracts form. Three (3) sets of the contract (hereinafter "Contract") were enclosed with the letter and the letter requested that all three copies be executed and returned to LDED within thirty (30) days. Finally, the letter stated that it was necessary to submit one (1) copy of a resolution authorizing a company official to sign the contract on behalf of the corporation.

17.  Plaintiff shows that one section of the Contract states that "…the Contractee (referring to SPL) *will construct a manufacturing establishment* in the State of Louisiana…", but in the same sentence, the Contract then states that "… the creation and operation of the said *addition* has been deemed by the Board to be of great benefit to the State…" (emphasis added). Later in the Contract, it states that "[T]he Contractee *will construct* at an approximate cost of $6,000,000,000, *an addition to its manufacturing establishment*." (emphasis added).

18.  Meg A. Gentle, identified as Chief Financial Officer, executed the Contract on behalf of SPL in Houston, Texas, on August 1, 2011; Kristy G. McKearn of

the Board executed the Contract on October 4, 2011; and, Governor Piyush "Bobby" Jindal approved/executed the Contract on October 12, 2011.

19.     On or about November 7, 2011, LDED mailed a letter to SPL, through Didier Consultants, Inc., which included a copy of a fully executed Contract. Also included were a copy of the Project Completion Report, the Affidavit of Final Cost, and the Incentives Program Annual Report documents that are required to be filed with LDED. The letter stated that the Project Completion Report was due not later than three (3) months after the beginning of operations or thirty (30) days after completion of construction, or receipt of the fully executed contract, whichever occurs last. The letter further stated that the Affidavit of Final Cost is due within six (6) months after construction has been completed, or receipt of the fully executed contract, whichever occurs last. And finally, the letter stated that the Incentives Program Annual Report is due by May 1 of the year following the year an exemption is granted.

20.     Pursuant to Article V of the Contract, the effective date of the Contract shall be the last day of the tax assessment year in which the project becomes operational as stated in the Project Completion Report, and from the effective date of the Contract and for a period of five (5) years thereafter, the Board gives and grants unto SPL an exemption from all ad valorem taxes, including all state, parish, municipal, district and special taxes for the property belonging to SPL as described in the Affidavit of Final Cost.

21.     Pursuant to Article IV of the Contract, a sworn statement specifying the exact date of completion and beginning of operation shall be filed with LDED's Office of Business Development on the Project Completion Report within thirty (30) days following the last day of the month after effective operation has begun, or construction is essentially complete, whichever occurs last.

22.     Upon information and belief, the Contract was considered to be a "Front End" contract due to the fact that the effective date of the contract and the resulting tax exemption would occur several years after the contract was actually executed, and SPL was required to file an Annual Status Declaration for Advance Contracts form each year with LDED until the effective date.

23. Upon information and belief, construction of the facility at the site in Cameron Parish began in August 2012. Pursuant to news reports readily available to the public, portions of the SPL facility became operational in February of 2016, and the first cargo vessel loaded with liquefied natural gas sailed from the facility on February 24, 2016. Based on these reports, and pursuant to Article V of the Contract, Plaintiff avers that the effective date of the Contract is December 31, 2016.

24. Upon information and belief, LDED has created sub-numbers related to Number 20110659-ITE, including Number 20110659C-ITE and Number 20110659D-ITE. Number 20110659C-ITE was created upon SPL's submission of a Project Completion Report and Affidavit of Final Cost to LDED with respect to a portion of the project described in Application Number 20110659-ITE. Number 20110659C-ITE shows an approved investment amount of $4,797,201,241.00, and an estimated tax benefit amount of $1,167,159,062. Upon information and belief, Number 20110659D-ITE was created for the remaining portion of the project described in Number 20110659-ITE, and has been assigned an estimated investment amount of $2,486,889,823.00, and an estimated tax benefit amount of $516,278,327. Upon information and belief, the original Contract executed in 2011 is the only contract that applies to the SPL project described under Number 20110659-ITE.

25. Plaintiff, JMCB, LLC, is a Louisiana domestic limited liability company which currently owns property (land) in Cameron Parish which is subject to ad valorem taxes for which no exemption is available.

26. Plaintiff avers that it will have an inflated ad valorem tax liability due and payable to Cameron Parish taxing bodies that receive ad valorem taxes as a result of the exemption granted to SPL through the Contract after the effective date of the Contract, and that it and the class members would, including the Cameron Parish taxing bodies that receive ad valorem taxes, benefit from the payment of ad valorem taxes by SPL.

27. Plaintiff avers that SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form to LDED which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact, SPL did not have an existing manufacturing plant or establishment of any kind at the project location at the

time the Board considered its Application, and was not engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process at that project location and at the time the Board considered its Application. Plaintiff avers that the Contract itself refers both to the construction of a new manufacturing establishment, and to an addition to a manufacturing establishment for the same SPL project, which is not possible in this instance. As a result, Plaintiff avers that the Board exceeded its constitutional authority in entering into the Contract because SPL did not qualify and was not authorized to receive an industrial tax exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F).

28.    Plaintiff avers that the Board exceeded its constitutional authority in entering into the Contract because SPL was not authorized to receive an industrial tax exemption under the Louisiana Constitution of 1974, Article VII, Section 21(F) because SPL's facility at 9243 Gulf Beach Highway in Cameron, Louisiana, is not an "addition" to any existing SPL plant or establishment which engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process at the time SPL's Application was considered by the Board. Yet, the Contract itself refers both to the construction of a new manufacturing establishment, and to an addition to a manufacturing establishment for the same project, which is not possible in this instance.

29.    Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of Louisiana Constitution of 1974, Article VII, Section 21(F) because SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form which indicated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact, SPL did not have an existing manufacturing plant or establishment of any kind at the project location at the time SPL's Application was considered by the Board, and was not engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process at that project location and at the time SPL's Application was

considered by the Board. As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that the Contract is an absolute nullity and/or is null and void and of no force or legal effect.

30. Plaintiff avers that SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form to LDED which failed to indicate that it was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F), and instead, indicated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F). As a result, Plaintiff avers that the Board exceeded its constitutional authority in entering into the Contract because SPL did not qualify and was not authorized to receive an industrial tax exemption under the Louisiana Constitution of 1974, Article VII, Section 21(F).

31. Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of Louisiana Constitution of 1974, Article VII, Section 21(F) because SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form to LDED which failed to state that SPL was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F), and instead, stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F). As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that the Contract is an absolute nullity and/or is null and void and of no force or legal effect.

32. Plaintiff avers that the Board exceeded its constitutional authority in entering into the Contract because SPL was not authorized to receive an industrial tax exemption under the Louisiana Constitution of 1974, Article VII, Section 21(F) because SPL's facility at 9243 Gulf Beach Highway in Cameron, Louisiana, is not a plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.

33. Plaintiff seeks a declaratory judgment against the Defendants declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of

Louisiana Constitution of 1974, Article VII, Section 21(F) because SPL's facility at 9243 Gulf Beach Highway in Cameron, Louisiana, is not a plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process. As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that the Contract is an absolute nullity and/or is null and void and of no force or legal effect.

34. Plaintiff avers that SPL's facility at 9243 Gulf Beach Highway in Cameron, Louisiana, is not a new "manufacturing establishment" or an "addition to an existing manufacturing establishment" according to the constitutional definition found at Louisiana Constitution of 1974, Article VII, Section 21(F). As a result, Plaintiff seeks a declaratory judgment against the Defendants finding that the Contract is an absolute nullity and/or is null and void and of no force or legal effect.

35. Plaintiff avers that the Contract is unconstitutional because the process described by SPL in its Application and/or as described in additional information provided to LDED does not meet the required definition of "working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition" definitions as outlined in the Louisiana Constitution of 1974, Article VII, Section 21(F). As a result, Plaintiff and the class seek a declaratory judgment against the Defendants declaring that the Contract is an absolute nullity and/or null and void and without force or legal effect.

36. This action is brought and maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this proposed Rule 23(b)(1) and/or (b)(2) class action on behalf of itself, and on behalf of all others similarly situated, as representative of the following proposed class:

> Any and all individuals and businesses domiciled in Louisiana that own property in Cameron Parish, State of Louisiana that is subject to ad valorem taxation, and any and all Cameron Parish governmental bodies that are entitled to receive Cameron Parish ad valorem property taxes, as of October 12, 2016.
>
> Specifically excluded from the class are Sabine Pass Liquefaction, LLC, its successors and assigns, and all members of the judiciary, their spouses, and their immediate family members.

37. The Plaintiff and the class are entitled to have this cause of action maintained as a class action pursuant to Rule 23(a), and 23(b)(1) and/or (b)(2) for, *inter alia*, the following reasons:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the class;

(c) the claims of the representative party are typical of the claims of the class;

(d) the representative party will fairly and adequately protect the interests of the class; and,

(e) the prosecution of separate actions by or against individual members of the class would create a risk of: (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the parties opposing the class, or (2) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(f) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

38. On information and belief, it is alleged that there are several thousand individuals and businesses, and several applicable governmental bodies in Cameron Parish which would qualify as a member of the proposed class.

**WHEREFORE**, Plaintiff JMBC on its own behalf, and on behalf of all others similarly situated, prays that after all due proceedings, there be judgment herein against the Defendants as follows:

I. That an order be entered herein certifying this action as a class action;

II. That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the Contract is null and void and without legal effect because SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form which stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F), when, in fact, SPL did not have an existing manufacturing plant or

establishment of any kind at the project location at the time SPL's Application was considered by the Board, and was not engaged in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process at that project location and at the time SPL's Application was considered by the Board;

   III. That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the Contract is null and void and without legal effect because SPL submitted an Industrial Ad Valorem Tax Exemption Program Application and Advance Notification form to LDED which failed to state that SPL was applying for an exemption under the "new manufacturing establishment" provision of La. Const. art. VII, § 21(F), and instead, stated that it was applying for an exemption under the "addition to an existing manufacturing establishment" provision of La. Const. art. VII, § 21(F);

   IV. That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the Contract is null and void and without legal effect because SPL's facility at 9243 Gulf Beach Highway in Cameron, Louisiana, is not a plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process;

   V. That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the Contract is null and void and without legal effect because SPL's facility at 9243 Gulf Beach

Highway in Cameron, Louisiana, is not a new "manufacturing establishment" or an "addition to an existing manufacturing establishment" according to the constitutional definition found at Louisiana Constitution of 1974, Article VII, Section 21(F);

VI. That this Court issue a declaratory judgment in favor of the Plaintiff JMCB and the Class and against the Defendants, declaring that the issuance of the Contract to SPL was an improper act of the Board in violation of the Louisiana Constitution of 1974, Article VII, Section 21(F) and declaring that the Contract is null and void and without legal effect because the "manufacturing process" described by SPL in its Application does not meet the required definition of "working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process," or the "manufacturing establishment" or "addition" definitions as outlined in the Louisiana Constitution of 1974, Article VII, Section 21(F);

VII. For all costs of this suit, applicable attorney's fees, and for legal interest thereon from the date of the filing of these proceedings; and,

VIII. For all other just and equitable relief.

**BY ATTORNEYS**:

*/s/ Stan P. Baudin*
**PATRICK W. PENDLEY – LSBA #10421
STAN P. BAUDIN – LSBA #22937
PENDLEY, BAUDIN & COFFIN, LLP
24110 Eden Street
Plaquemine, LA 70764
(225) 687-6396 – VOICE
(225) 687-6398 - FAX**

**CHRISTOPHER D. SHOWS – LSBA #20608
PIERCE & SHOWS, APLC
601 St. Joseph Street
Baton Rouge, LA 70802
(225) 388-9574 – VOICE
(225) 388-0081 - FAX**

**BRIAN A. EDDINGTON – LSBA #18879
BRIAN A. EDDINGTON, APLC
8941 Jefferson Hwy., Suite 200
Baton Rouge, LA 70809
(225) 924-4066 – VOICE
(225) 927-4708 - FAX**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing First Amending Class Action Complaint was served upon all counsel of record via the Court's CM/ECF filing system this 12th day of January, 2018.

*/s/ Stan P. Baudin*
**Stan P. Baudin**